Justice THOMAS delivered the opinion of the Court.
The Fair Debt Collection Practices Act (FDCPA) authorizes private civil actions against debt collectors who engage in certain prohibited practices. 91 Stat. 881, 15 U.S.C. § 1692k(a). An action under the FDCPA may be brought "within one year from the date on which the violation occurs." § 1692k(d). This case requires us to determine when the FDCPA's limitations period begins to run. We hold that, absent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered.
I
A
In 1977, Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." § 1692(e). The FDCPA pursues these stated purposes by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices. §§ 1692b-1692j.
The FDCPA authorizes the Federal Trade Commission, the Bureau of Consumer Financial Protection, and other federal agencies to enforce its provisions. § 1692l . The FDCPA also authorizes private civil actions against debt collectors. § 1692k(a). These private civil actions "may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." § 1692k(d).
B
Petitioner Kevin Rotkiske failed to pay approximately $1,200 in credit card *359 debt.[1] His credit card company referred the debt to respondent Klemm & Associates (Klemm) for collection.[2] In March 2008, Klemm sued Rotkiske, seeking to collect the unpaid debt. Klemm attempted service at an address where Rotkiske no longer lived, and a person whose description did not match Rotkiske's accepted service of the complaint. Klemm later withdrew the suit.
Klemm refiled suit in January 2009, and a process server attempted service at the same address. Once again, someone other than Rotkiske accepted service. Rotkiske failed to respond to the summons, and Klemm obtained a default judgment. Rotkiske claims that he was not aware of Klemm's 2009 debt-collection lawsuit until September 2014, when he was denied a mortgage because of the default judgment against him.
On June 29, 2015, more than six years after the default judgment, Rotkiske brought suit against Klemm under the FDCPA. Rotkiske's amended complaint alleged that equitable tolling excused his otherwise untimely filing because Klemm purposely served process in a manner that ensured he would not receive service. The sole FDCPA claim in the complaint asserted that Klemm commenced the 2009 debt-collection lawsuit after the state-law limitations period expired and therefore "violated the FDCPA by contacting [Rotkiske] without lawful ability to collect." First Amended Complaint in No. 2:15-cv-03638 (ED Pa.), Doc. 15, p. 4.
Klemm moved to dismiss the action as barred by the FDCPA's one-year statute of limitations, 15 U.S.C. § 1692k(d). Rotkiske argued that the court should apply a "discovery rule" to delay the beginning of the limitations period until the date he knew or should have known of the alleged FDCPA violation. To support this contention, Rotkiske relied on the Ninth Circuit's decision in Mangum v. Action Collection Serv., Inc. , 575 F.3d 935 (2009). That case held that, under the "discovery rule," limitations periods in federal litigation generally begin to run when plaintiffs know or have reason to know of their injury. Id., at 940-941.
The District Court dismissed the action. It held that the Ninth Circuit's general rule does not apply to § 1692k(d), relying on the statute's plain language. The court also concluded that Rotkiske was not entitled to equitable tolling because, even accepting the truth of the allegations in the complaint, he was not misled by Klemm's conduct.
On appeal, the Third Circuit sua sponte reviewed the case en banc and unanimously affirmed. 890 F.3d 422 (2018). The court held that, under the text of § 1692k(d), the FDCPA's one-year limitations period runs from the "date on which the violation occurs," not the date a potential plaintiff discovers or should have discovered the violation. Id., at 425-426. The court expressly rejected the Ninth Circuit's approach, stating that there is no default presumption that all federal limitations periods run from the date of discovery.
*360 Id., at 427. Rotkiske failed to raise the application of equitable doctrines on appeal, so the court did not address that issue. Id., at 428-429.
Given the conflict between the Courts of Appeals, see id., at 427, we granted certiorari. 586 U.S. ----, 140 S.Ct. 355, --- L.Ed.2d ----, 2019 WL 6703563 (2019).
II
The question before us is whether the "discovery rule" applies to the FDCPA's limitations period. The phrase "discovery rule," however, has no generally accepted meaning. Rotkiske's arguments invoking the discovery rule implicate two distinct concepts-the application of a general discovery rule as a principle of statutory interpretation and the application of a fraud-specific discovery rule as an equitable doctrine. We address each in turn.
A
When interpreting limitations provisions, as always, "we begin by analyzing the statutory language." Hardt v. Reliance Standard Life Ins. Co. , 560 U.S. 242, 251, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). If the words of a statute are unambiguous, this first step of the interpretive inquiry is our last. Connecticut Nat. Bank v. Germain , 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). If "there are two plausible constructions of a statute of limitations," we generally "adopt the construction that starts the time limit running when the cause of action ... accrues" because "Congress legislates against the 'standard rule that the limitations period commences when the plaintiff has a complete and present cause of action.' " Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson , 545 U.S. 409, 418-419, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005) (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal. , 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997) ).
Here, the text of § 1692k(d) clearly states that an FDCPA action "may be brought ... within one year from the date on which the violation occurs." That language unambiguously sets the date of the violation as the event that starts the one-year limitations period. At the time of the FDCPA's enactment, the term "violation" referred to the "[a]ct or instance of violating, or state of being violated." Webster's New International Dictionary 2846 (2d ed. 1949) (Webster's Second). The term "occur" meant "to happen," and, as Webster's Second explains, "occur" described "that which is thought of as definitely taking place as an event." Id., at 1684. Read together, these dictionary definitions confirm what is clear from the face of § 1692k(d) 's text: The FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened. We must presume that Congress "says in a statute what it means and means in a statute what it says there." Connecticut Nat. Bank , 503 U.S. at 254, 112 S.Ct. 1146.
Rotkiske does not contest the plain meaning of § 1692k(d) 's text or claim that he brought suit within one year of the alleged FDCPA violation. Instead, he suggests that we should interpret § 1692k(d) to include a general "discovery rule" that applies to all FDCPA actions. In effect, Rotkiske asks the Court to read in a provision stating that § 1692k(d) 's limitations period begins to run on the date an alleged FDCPA violation is discovered.
This expansive approach to the discovery rule is a "bad wine of recent vintage." TRW Inc. v. Andrews , 534 U.S. 19, 37, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (Scalia, J., concurring in judgment). It is a fundamental principle of statutory interpretation that "absent provision[s] cannot *361 be supplied by the courts." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 94 (2012). To do so " 'is not a construction of a statute, but, in effect, an enlargement of it by the court.' " Nichols v. United States , 578 U.S. ----, ----, 136 S.Ct. 1113, 1118, 194 L.Ed.2d 324 (2016) (quoting Iselin v. United States , 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566 (1926) ).
Atextual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision. Congress has enacted statutes that expressly include the language Rotkiske asks us to read in, setting limitations periods to run from the date on which the violation occurs or the date of discovery of such violation. See, e.g., 12 U.S.C. § 3416 ; 15 U.S.C. § 1679i. In fact, at the time Congress enacted the FDCPA, many statutes included provisions that, in certain circumstances, would begin the running of a limitations period upon the discovery of a violation, injury, or some other event. See, e.g. , 15 U.S.C. § 77m (1976 ed.) ; 19 U.S.C. § 1621 (1976 ed.) ; 26 U.S.C. § 7217(c) (1976 ed.) ; 29 U.S.C. § 1113 (1976 ed.).
It is not our role to second-guess Congress' decision to include a "violation occurs" provision, rather than a discovery provision, in § 1692k(d). The length of a limitations period "reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." Johnson v. Railway Express Agency, Inc. , 421 U.S. 454, 463-464, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). It is Congress, not this Court, that balances those interests. We simply enforce the value judgments made by Congress.
B
Narrowing his initial assertion and moving away from the question on which we granted certiorari, Rotkiske also contends that his filing should be treated as timely under an equitable, fraud-specific discovery rule, relying on a line of decisions beginning with Bailey v. Glover , 21 Wall. 342, 22 L.Ed. 636 (1875). Rotkiske claims that Bailey and its progeny apply an equitable doctrine that delays the commencement of the statute of limitations in fraud actions, and that he has pleaded (or could plead) a claim within the scope of this doctrine. This Court has noted the existence of decisions applying a discovery rule in "fraud cases" that is distinct from the traditional equitable tolling doctrine. Merck & Co. v. Reynolds , 559 U.S. 633, 644, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010) ; Gabelli v. SEC , 568 U.S. 442, 450, 133 S.Ct. 1216, 185 L.Ed.2d 297 (2013) (referring to the "fraud discovery rule"). And it has repeatedly characterized these decisions as applying an equity-based doctrine. California Public Employees' Retirement System v. ANZ Securities, Inc. , 582 U.S. ----, ---- - ----, 137 S.Ct. 2042, 2051-2053, 198 L.Ed.2d 584 (2017) ; Lozano v. Montoya Alvarez , 572 U.S. 1, 10-11, 134 S.Ct. 1224, 188 L.Ed.2d 200 (2014) ; Credit Suisse Securities (USA) LLC v. Simmonds , 566 U.S. 221, 226-227, 132 S.Ct. 1414, 182 L.Ed.2d 446 (2012) ; Young v. United States , 535 U.S. 43, 49-50, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002). Rotkiske failed to preserve this issue before the Third Circuit, 890 F.3d at 428, and failed to raise this issue in his petition for certiorari. Accordingly, Rotkiske cannot rely on this doctrine to excuse his otherwise untimely filing.[3]
*362 * * *
For the foregoing reasons, the judgment of the Court of Appeals is affirmed.
It is so ordered .

Because this case comes to us from a decision granting a motion to dismiss, we assume the truth of the facts alleged in Rotkiske's operative complaint. See, e.g. , Swierkiewicz v. Sorema N. A. , 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Paul Klemm, the managing partner of Klemm & Associates, moved to a new firm named Nudelman, Nudelman & Ziering, which was later renamed Nudelman, Klemm & Golub. Rotkiske has sued Paul Klemm, Klemm & Associates, Nudelman, Klemm & Golub, and Nudelman, Nudelman & Ziering. For the sake of simplicity, we refer to the respondents as Klemm.

We do not decide whether the text of 15 U.S.C. § 1692k(d) permits the application of equitable doctrines or whether the claim raised in this case falls within the scope of the doctrine applied in Bailey and its progeny.